# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 6, 2021

Lyle W. Cayce
Clerk

No. 20-30649

United States of America,

*Plaintiff—Appellee*,

*versus*

Deion A. Duruisseau,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 1:12-CR-320-1

Before Higginbotham, Stewart, and Wilson, *Circuit Judges*.
Per Curiam:[*]

Defendant-Appellant Deion A. Duruisseau ("Deion") appeals his sentence for a second time after a panel of this court vacated and remanded his original sentence on grounds that the district court erred in calculating the loss amount. Because we hold that the district court did not commit reversible plain error on remand, we AFFIRM.

---

[*] Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 20-30649

## I. Factual & Procedural Background

From June 2004 through approximately October 2009, Deion, his wife, Lashawn A. Duruisseau ("Lashawn"), and their title attorney Harold L. Lee, entered into a partnership for the purpose of defrauding various financial institutions. Through their real-estate development company Billionaire Properties, Deion and Lashawn claimed to flip homes by purchasing and remodeling properties to sell for a profit. Deion, Lashawn, and Lee collectively recruited buyers to purchase properties at inflated prices, submitted fraudulent loan documents to the mortgage lenders, and pocketed the proceeds when the mortgages closed. The misrepresentations on the loan documents related to monthly income, side agreements, source of down payments, and distribution of proceeds. Many of the properties were foreclosed on because the owners defaulted on their payments.

In 2016, a jury convicted Deion, Lashawn, and Lee of conspiracy to commit bank fraud[1] and two counts of bank fraud.[2] The district court subsequently granted a motion for judgment of acquittal on one of the substantive counts based on the Government's failure to establish that the lender was federally insured. In preparing Deion's presentence investigation report ("PSR"), the probation officer aggregated all of the down payments made during and in furtherance of the conspiracy, which resulted in a total loss amount of $652,846. This resulted in a 14-level upward adjustment to Deion's sentence under U.S.S.G. § 2B1.1(b)(1)(H). Deion objected to the probation officer's use of down payments to calculate the loss amount. He argued that the district court should have instead utilized intended loss, which could be calculated by aggregating the profits realized from selling the

---

[1] 18 U.S.C. § 1349.

[2] 18 U.S.C. § 1344.

2

properties involved in the scheme and subtracting the related expenses. In an Addendum to the PSR, the probation officer stressed the difficulties of calculating the loss amount given the complex nature of the scheme and argued that Deion's proposed method for calculating loss was flawed and that his objections should be overruled.

The district court agreed with the probation officer, overruled Deion's objections, and sentenced him within the advisory guidelines range to concurrent terms of imprisonment of 144 months to be followed by a five-year term of supervised release. It also imposed a fine of $15,000 and ordered Deion to pay $70,598.91 in restitution to the victim that submitted proof of loss.

A panel of this court upheld Deion's convictions but held that the district court erred in relying on the probation officer's use of the down payments on the properties to calculate the loss amount under U.S.S.G. § 2B1.1. *See United States v. Duruisseau*, 796 F. App'x 827, 830, 839–41 (5th Cir. 2019). In doing so, the panel explained:

> [W]e see no reason why the district court could not determine actual loss to the banks by a traditional net-loss calculation—that is, the total of the amounts loaned but not recouped. The district court stated that some lenders were unable to provide the information, but that seems to weigh against holding the defendants responsible for money that cannot be proven to have been lost. That is, if the bank received the money, either from the borrower or by selling the property, it was not an actual loss. To suggest that the down payments actually made (even if the source was fraudulently stated) were "intended loss" equally makes no sense.

*Id*. at 840. The panel remanded with instructions for the district court to utilize a loss calculation with "a closer nexus to the actual or intended loss" than the aggregation of the down payments. *Id*.

No. 20-30649

Following remand, counsel for both sides agreed that, for guidelines purposes, the loss that should be attributed to Deion was between $150,000 and $249,000, which resulted in a 10-level upward adjustment and yielded a guidelines range of 84 to 105 months. This court granted Deion's motion to expand the record to include a copy of a written stipulation signed by Lashawn, her counsel, Deion's counsel, and counsel for the Government. The district court accepted the stipulation and ordered that the PSR be revised to reflect it.

The resentencing hearing was conducted by video on October 13, 2020. At the outset of the hearing, the district court inquired if there were any objections to the PSR and confirmed that there were none. It also confirmed that there was a revised stipulated loss amount of $150,000 to $249,000. It then adopted the revised PSR. Defense counsel offered mitigation arguments in favor of a downward variance that would result in a sentence of time served. The district court declined to grant the variance and sentenced Deion to concurrent terms of 100 months of imprisonment. It also reimposed a five-year term of supervised release and again ordered Deion to pay $70,598.91 in restitution. Deion filed this appeal.

## II. Standard of Review

When there is no objection at sentencing with respect to the district court's compliance with Rule 32(i)(1)(A), plain error review applies on appeal. *United States v. Esparza-Gonzalez*, 268 F.3d 272, 274 (5th Cir. 2001) (citing FED. R. CRIM. P. 32(i)(1)(A)). To prevail, the defendant must show a forfeited error that is clear or obvious and that affects his substantial rights. *Puckett v. United States*, 556 U.S. 129, 135 (2009). In the sentencing context, demonstrating an impact on substantial rights generally requires showing "a reasonable probability that, but for the district court's error, the appellant would have received a lower sentence." *United States v. Davis*, 602 F.3d 643,

4

647 (5th Cir. 2010). If the defendant makes the requisite showing, this court has the discretion to correct the error but only if it "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Puckett*, 556 U.S. at 135 (internal quotation marks and citation omitted).

## III. Discussion

On appeal, Deion contends that the district court plainly erred by failing to confirm at sentencing that he had reviewed the revised PSR with his attorney, as required by Rule 32(i)(1)(A). He argues that if he had been afforded the opportunity to read and review the PSR with his counsel before being sentenced, he would have objected to the stipulated loss amount. He further asserts that the stipulated loss amount in the revised PSR is arbitrary, and under this court's decision remanding for resentencing, the district court was required to base its loss calculation on actual, documented losses, which were limited to $70,600. We address each of his arguments in turn.

In *United States v. Diggles*, this court held that a sentencing court must "verify that the defendant reviewed the PSR with counsel. If he has not, the sentencing should not proceed." 957 F.3d 551, 560 (5th Cir. 2020) (en banc) (internal citation omitted) (citing Fed. R. Crim. P. 32(i)(1)(A)). There, we explained that this procedure protects the defendant's Fifth Amendment right to be given "notice of the sentence and an opportunity to object." *Id.* at 560. "We have declined to interpret Rule 32 as creating an absolute requirement that the district court 'specifically . . . ask a defendant whether he has read the [PSR].'" *Esparza-Gonzalez*, 268 F.3d at 274 (quoting *United States v. Victoria*, 877 F.2d 388, 340 (5th Cir. 1989)). "Instead, we 'draw reasonable inferences from court documents, the defendant's statements, and counsel's statements' to determine whether the defendant has been given an opportunity to read the PSR with his counsel." *Id.* (quoting *Victoria*, 877 F.2d at 340.

No. 20-30649

As a preliminary matter, we agree with the Government that the record does not support Deion's claim that he did not review the revised PSR with his attorney prior to resentencing. The sole issue at Deion's resentencing hearing was the loss amount. The district court confirmed at the outset of the hearing that there were no objections to the PSR by stating, "All right. The revised presentence report was published . . . and we received no objections to that. Are there any comments with regard to the new presentence report, the revised one?" Deion's counsel replied in Deion's presence, "No, Your Honor. Just like the case before this, the [G]overnment and [Deion] entered into a stipulation as to the loss amount, which was the kind of sole reason for the case to be re-sentenced." The district court replied:

> That's correct. And to reiterate for purposes of Deion['s] case, we had a stipulation to amount of loss, the amount of loss being between $150,000 and $249,000, thus affecting the guideline level. All right. Without objections to the presentence report as amended, I'm going to adopt them as the court's findings of fact on this re-sentencing proceeding.

Deion's counsel then referenced a sentencing memorandum that he had prepared and numerous letters that he had submitted on Deion's behalf in favor of mitigation and the district court acknowledged his receipt and review of the documents.

The district court then directly asked Deion if there was anything he wanted to say in mitigation prior to sentencing. Deion replied affirmatively and spoke at length, referencing his regret, the effect of his actions on his family, and his own decision to transform his life moving forward. In addressing the district court, Deion spoke eloquently and quoted from the Bible and Abraham Lincoln's biography. At no point during his multiple exchanges with the district court did he express that he had not reviewed the

PSR with his counsel or that he disagreed with the stipulated loss amount contained therein. Given Deion's obvious intelligence and preparation in advance of resentencing, his failure to alert the district court of any purported disagreement he had with the PSR, and his defense counsel's statements to the district court in his presence that there were no objections to the PSR and that the parties had agreed upon the revised stipulated loss amount, Deion's claim that he did not review the revised PSR with his counsel prior to resentencing appears disingenuous at best.

Nevertheless, the record reveals that although the district court confirmed at the outset of the hearing that there were no objections to the revised PSR and that the parties had agreed to the stipulated loss amount contained therein, it did not specifically verify that Deion had reviewed the PSR with his counsel prior to resentencing. *See Diggles*, 957 F.3d at 560. Thus, for the purposes of our analysis here, we assume that the district plainly erred in failing to do so. *See Puckett*, 556 U.S. at 135.

According to Deion, this error affected his substantial rights because, had the district court known that he objected to the stipulated loss amount in the PSR, it would have been "compelled to reject" it and would have instead calculated a loss of $70,600. He argues that this loss amount would have yielded a reduced guidelines range of 57 to 71 months of imprisonment and the district court would have sentenced him within that range. We disagree.

As the Government points out, the loss amount of $70,600 that Deion proposes is only attributable to one of the several financial institutions that he defrauded. At his first sentencing hearing, Deion's counsel proposed a loss amount of $70,000 using the same argument that Deion advances here and the district court expressly rejected it. In doing so, the district court reasoned that the fact that the other defrauded lenders in this case did not seek to recoup their losses did not mean that they did not sustain the losses.

Moreover, at resentencing the district court acknowledged with approval Deion's statement that "his life has changed" but declined to grant a downward variance on that basis. The district court emphasized that it was "not all about the guidelines" and noted that it was also required to consider the applicable sentencing factors under 18 U.S.C. § 3553(a). It then pointed out that Deion's criminal history category of IV was significant and noted that his pretrial release had been revoked because he had committed another instance of bank fraud while awaiting trial in this case.

These statements by the district court indicate that it would likely have imposed the same sentence regardless of whether Deion had objected to the PSR and, for the second time, proposed a loss amount of approximately $70,600. Accordingly, Deion has failed to show that his substantial rights were affected by the district court's failure to confirm that he had reviewed the revised PSR with his counsel prior to resentencing. *See Davis*, 602 F.3d at 647. Consequently, he has not demonstrated reversible plain error. *See Puckett*, 556 U.S. at 135.

## IV. Conclusion

For the foregoing reasons, we AFFIRM the sentence imposed by the district court on remand.